SOMERSET POTTERS WORKS *vs.* WILLIAM MINOT & others.

In this commonwealth, by *St.* 1838, *c.* 163, § 21, the net proceeds of the joint stock of an insolvent firm must be first appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner must be first appropriated to pay his separate creditors.

And *it seems,* that if there be no joint property, the creditors of the firm cannot, under that statute, share in the separate property *pari passu* with the separate creditors.

Under that statute, the assignees of the firm cannot prove against the separate estate of either partner any supposed indebtedness due the firm from such partner before the insolvency.

PETITION to this court, as a court of chancery, under *St.* 1838, *c.* 163, § 18, by a corporation, called the Somerset Potters Works, setting forth that Horace Gray and Nathaniel Francis, doing business under the name of Horace Gray & company, on the 24th November, 1847, filed a petition before William Minot, Esq. master in chancery, one of the respondents, for the benefit of the insolvent laws of this common-

wealth, and that Robert Hooper, William E. Coffin, and William S. Bullard, the other three respondents, were duly chosen their assignees.

The petitioners further alleged that they had proved a claim against said Horace Gray & company of $2,135.31, which allegation was not denied. They also averred, that the partnership between Horace Gray and Nathaniel Francis was merely nominal, and that Horace Gray was the sole owner of all the property standing in the name of the firm, and that said Francis received an annual salary for his services, viz: $4,500, deducting one half of the counting-room expenses, occupied by the firm. This allegation was not admitted by the respondents, and certain facts were agreed upon this point, which sufficiently appear in the opinion of the court.

The petition also averred that said Horace Gray individually was indebted to the firm of Horace Gray & company in the sum of $554,465, and that the assignees of the firm ought to be allowed to prove this amount against said Gray's individual estate, and thus to increase the assets of the company for distribution among the company creditors; and certain facts were admitted concerning the origin and nature of this indebtedness, which, from the view taken of this point by the court, it is unnecessary here to recapitulate, the court not being of opinion that such indebtedness, upon the facts agreed, could with propriety be considered an indebtedness by one partner to the copartnership for specific purchases, for carrying on a separate trade or business.

The petitioners also set forth, and contended in argument, that there was no joint property of the firm of Horace Gray & company, inasmuch as said Francis had no interest in any of the property, and therefore that they ought to be allowed to prove their claim against the individual estate of said Horace Gray, and share in his assets *pari passu* with his individual creditors; but by the agreed statement of facts it appeared that " the assignees received from the assets of Horace Gray & company the sum of $95,709.70; of which $2,474.36, was cash on hand at the time of the failure. Of the balance some came into their hands unincumbered, and had

50 *

been sold by them, and the remainder was pledged before the failure; but the assignees, at the time of filing this petition, had nothing in their hands belonging to the estate of the company."

From the facts agreed it also appeared that individual claims were proved before the master against the separate estates of said Gray and said Francis, and that the assignees had more than sufficient from the individual assets of each partner, to pay his individual debts in full. The master in chancery refused to order, at the request of the petitioners, the assignees to pay the joint creditors of Horace Gray & company out of all the assets in their hands derived from the joint and separate estates, *pari passu* with the separate creditors of Horace Gray, but directed them to pay the creditors of Horace Gray individually out of the assets of Horace Gray, before paying any thing from said individual estate to the creditors of the company. This petition prayed for a reversal of said order. The proprietors of the Sunderland Bridge, a separate creditor of said Horace Gray, opposed the prayer of the petition.

*S. E. Sewall,* for the petitioners.

*C. B. Goodrich & M. Morton, Jr.* for the respondents.

DEWEY, J. This case comes before us upon a petition of the Somerset Potters Works, setting forth that the respondents, Hooper, Coffin, and Bullard, have, under the *St.* of 1838, *c.* 163, been duly appointed assignees of the estate of Horace Gray & company, and also of Horace Gray individually; that said assignees hold certain funds for distribution among the lawful creditors of said insolvents; and that the petitioners are entitled, as creditors, to a *pro rata* distribution; and praying this court to direct that the said assignees make a dividend among all the creditors of Horace Gray and Horace Gray & company, ratably, in proportion to their respective claims, out of the proceeds of the property of Horace Gray and Horace Gray & company, without any discrimination. The petitioners further ask, if this cannot be done, that the demand or debt due Horace Gray & company from Horace Gray, may be allowed to share in the

Somerset Potters Works *v.* Minot & others.

dividend of Horace Gray's separate estate, ratably with the private debts of Horace Gray.

It is conceded that the proceedings in insolvency were instituted on the application of Horace Gray and Nathaniel Francis, as copartners, under the firm of Horace Gray & company ; that the petitioners' demand was in form a debt due from Horace Gray & company, and as such has been presented and allowed by the master in chancery ; and that there are assets in the hands of the assignees to a large amount, the avails of the individual estate of Horace Gray, which are claimed for distribution by the separate creditors of Horace Gray, to the exclusion of the creditors of Horace Gray & company.

The first question raised is, whether there was any such copartnership as that of Horace Gray & company. The petitioners deny the existence of any such copartnership. They contend that it was only a nominal partnership. This position is not sustained by the proof. It appears by the facts agreed that in September, 1829, Horace Gray, Samuel Dow, Jr. and Nathaniel Francis, formed a copartnership under the style of Horace Gray & company, said Gray alone putting into the concern the capital of $50,000. Dow retired from the firm in 1844, and Gray and Francis remained and carried on business under the style of Horace Gray & company up to November, 1847, the period when they petitioned for the benefit of the insolvent law. The firm were to charge in the form of commissions to the amount of $9,000 for their duties as connected with various iron works, of which sum Francis was to receive one half, and nothing further, as profits or emoluments from the firm. This partnership was in some respects a peculiar one, but it was an actual partnership. It had a copartnership name, transacted business as a firm, bought and sold as a firm, and used the copartnership name in the securities given for purchases made to meet their various wants in reference to the numerous iron works which they supplied with coal and iron. Whatever was bought on their joint credit vested in both partners as their joint property. In their dealings with the public they assumed to be

copartners, and as to all creditors they must be treated as such. Those dealing with the company in their copartnership name are to have all the rights and priorities resulting therefrom, and are to be subject of course to all the correlative rights of the separate creditors of the several members of the firm to all priorities resulting from that relation. The present case may be such, as to the state of the assets, as would render it much more beneficial to the copartnership creditors to consider these debts as the private debts of Horace Gray; but, under a different form of conducting the business of these parties, it might equally well have happened that the copartnership assets might have been the greater portion of the estate to be distributed, and it would have been more beneficial to the partnership creditors to have insisted upon the priority which would attach to them as such. But the great principle of distribution, as respects copartnership and separate creditors, is not affected by the consideration of there being more or less joint estate or separate estate, or whether in a particular case it would be more equitable to vary the rule. The question is, whether such partnership existed, and whether these creditors gave credit to the copartnership as their debtor.

It was indeed urged upon us in the argument for the petitioners, that " the partnership creditors may at their option consider this partnership as real or nominal, whichever is most for their interest." This would be totally to disregard the rights of the separate creditors. There is no such distinction; and neither is to be thus favored at the expense of the other's rights. In marshalling the assets for distribution, the creditors, whether creditors of all the insolvents jointly, or creditors of one of the firm individually, are to be assigned to their appropriate class, and being thus assigned are limited to the priorities attaching to that class of creditors. Nor can we be in any degree influenced by the course of argument strongly urged upon us, that a rule, which debars the joint creditors of a copartnership from sharing equally with the separate creditors of one of the firm in the assets of such individual partner, is arbitrary and unjust; inasmuch as the legislature

has seen fit to adopt it as the proper rule, and one to be applied in all such cases. *St.* 1838, *c.* 163, § 21. Our statute upon this subject must be our guide; and whether in accordance with the views of Lord Hardwicke, in favor of joint creditors being admitted to share in the distribution of the separate estate, or of Lord Thurlow, who held the contrary view, it is equally the law to be administered here. This matter, which, independent of the statute, might have been a subject for controversy, has become a part of our written code, and as such, as respects this commonwealth, overrides all questions of expediency or the fitness of things. It takes the subject in its general bearings, looking at it as a whole, and prescribes a uniform rule for all cases. Like all other general rules, it may, in particular cases, work an apparent injustice, or result in an inequality as respects the different classes of creditors. The statute under which these proceedings in insolvency were instituted, and by virtue of which the assignees hold these assets, has declared that in cases where proceedings are thus instituted against a copartnership, all the estate of the partnership, and all the separate estate of the individual partner, shall be passed into the hands of the assignees, that the avails thereof shall be kept distinct, and " that the net proceeds of the joint stock shall be appropriated to pay the creditors of the company, and the net proceeds of the separate estate of each partner shall be appropriated to pay his separate creditors; and if there shall be any balance of the separate estate of any partner, after the payment of his separate debts, such balance shall be added to the joint stock for the payment of joint creditors; and if there shall be any balance of the joint stock, after the payment of the joint debts, such balance shall be divided and appropriated to and among the separate estates of the several partners." *St.* 1838, *c.* 163, § 21.

In the view of the court, this distribution of assets must be upon the principle of a copartnership, as between Gray and Francis. The whole course of proceedings in insolvency in the present case assumes the existence of an actual copart-

nership. It was the foundation of the warrant, and was recognized in the choice of assignees, where the copartnership creditors had the controlling voice. By the institution of these proceedings against the copartnership, and by assuming its existence, all the private property of Francis has been transferred to the assignees for distribution. Further; these petitioners have actually filed their debts against the private estate of Francis, with the view of taking their *pro rata* share of any balance that may remain after his private debts are satisfied. It being a case of copartnership, the statute rule forbids the creditors of the copartnership to share *pro rata* in the distribution of the assets of Horace Gray, with his private creditors.

2. The petitioners, however, further urge, that if Horace Gray & company are to be considered as copartners, the copartnership creditors may insist that the debt of Horace Gray to Horace Gray & company shall be proved against Horace Gray as one of his separate debts, and be entitled to share in his private assets *pro rata* with the other private creditors of Horace Gray. The position taken is, that where one partner carries on a separate trade or business, and in dealings in that trade or business becomes indebted to the firm of which he is a member, the firm may prove against the separate estate of such partner, and share with his private creditors in the distribution of his separate estate. We are aware that in the English courts there have been cases where, under the peculiar equities of the case, the courts of equity have allowed a demand or debt for goods sold by a firm to one partner, to carry on his separate business, to be allowed as against his separate estate. There has been, however, great fluctuation in the opinions of the English chancellors on this subject, and it is at this moment somewhat uncertain to what extent this exception to the general rule is allowed. Any exception of this kind is full of embarrassment and difficulty, and is in conflict with that simple and direct mode of distribution of joint and separate assets, which the *St.* of 1838, *c.* 163, has provided.

Among other obvious difficulties that would arise from the admission of this claim of Horace Gray & company against the estate of Horace Gray individually, are those as to the computation of the whole amount of debts upon which fifty per cent. is to be calculated, in reference to the discharge of the debtor, and in determining who are the creditors to assent to the discharge. Can Horace Gray, of the firm of Horace Gray & company, assent effectually to the discharge of the same Horace Gray from all his private debts? Can Horace Gray and his copartner be legally creditors of Horace Gray in any proper sense that will allow them to prosecute claims against Horace Gray? We are not satisfied that it is proper, under the provisions of *St.* 1838, *c.* 163, to attempt to engraft upon the plain and direct general rule of distribution of joint and separate assets, any such exceptions as have to some extent been allowed in the English chancery courts, upon the hypothesis that the special equities of particular cases may seem to require it. In truth, it would seem that the effect of allowing the balance due Horace Gray & company from Horace Gray, to be proved against the private estate of Horace Gray, as proposed by the petitioners, would be virtually to withdraw the separate assets of Horace Gray from their proper destination, and would be in direct violation of the statute.

But it is in our view questionable whether the indebtedness of Horace Gray to the firm of Horace Gray & company, can with propriety be placed upon the footing of one partner being indebted to the copartnership for specific purchases, for carrying on a separate trade or business. To a very considerable extent the indebtedness of Horace Gray to Horace Gray & company arose in the very course of business contemplated by the partnership, and was an indebtedness to be known and ascertained only on the final settlement of the partnership concerns. It will be perceived at once that the actual liabilities, as between Horace Gray and his partner, can be determined only when the whole partnership liabilities are discharged. Horace Gray may be apparently indebted to the firm for goods furnished for his iron works, and moneys received

and used by him, &c., but he is also liable for all outstanding partnership debts to others, and in the final adjustment will only be liable to his copartner for what he may have in his hands above his due proportion, after allowances for all debts he may have discharged.

3 It is then further insisted that under the English decisions the law allows as an exception from the general rule of distribution of joint and separate assets of the partners that, in case there are no joint assets for distribution, the joint creditor may share in the separate property *pari passu* with the separate creditor. The rule, as stated by Mr. Justice Story, is that where there is no joint property, and no solvent partner, this may be done. Story on Part. § 363. Waiving any point as to there being a solvent partner, and considering merely the question of any joint property, the inquiry arises whether, by the facts the petitioners have shown that there was no joint property. 1st. It is not shown, as was assumed in the argument, that Francis was only a nominal partner, so that, as partners, he and Gray had no common and joint property. On the contrary, the two partners, Gray and Francis, became in the first instance the owners of all goods purchased on account of the copartnership, and for which the drafts or promissory notes of the partnership were given to the vendors. 2d. The agreed facts show a large sum received by the assignees from the assets of Horace Gray & company. Of this sum it is stated that $2474 was cash on hand at the time of the failure, and of the institution of the proceedings in insolvency. How these funds have been since applied, is a matter not agreed by the parties. But the case, as stated, shows most clearly some joint property. Nothing short of the entire want of any joint assets authorizes the joint creditors, under the English rule, to prove their demands against the separate estate, and share with the separate creditors equally in a *pro rata* distribution of the separate property of one of the partners. In *Ex parte Peake*, 2 Rose, 54, the sum of £1 11*s.* 6*d.* of the joint property was held sufficient to defeat the right of joint creditors to share in the separate estate. In that case

the lord chancellor said five shillings was quite enough to prevent it. This matter was much considered by judge Ware in a case in the district court of the United States, and the result seems to be that any amount of joint property, however small, will defeat this exception to the general rule of distribution, and confine the joint creditors to the joint estate, until the separate creditors are fully paid. *In re Marwick,* Daveis, 229, s. c. 8 Law Reporter, 169. See also Eden Bank Laws, 172; 3 Kent Com. 65.

Indeed, this whole matter of exceptions to the general rule of distribution of joint and separate assets, as we have already intimated in considering another point, is of very questionable expediency, and we are not disposed to favor its introduction into our system. We are strongly inclined to the opinion that our rule of distribution of the assets of insolvent debtors, being a statute provision, is to be carried into effect according to its terms. The legislature has created the rule, but has not appended to it the exceptions. It is unnecessary, however, to express any more decided opinion upon this point, inasmuch as it appears that there were joint assets quite sufficient to prevent the joint creditors from proving their debts against the separate estate, for the purpose of sharing with the separate creditors the separate assets, even if we were to give full effect to the English rule.

It results, therefore, from the view we have taken of the various points raised in the case that the prayer of the petitioners must be refused. The court are of opinion, that under our statute the rule of distribution will be that the assets of Horace Gray & company are to be distributed *pro rata* among the creditors of the firm, and the separate assets of Horace Gray are to be distributed *pro rata* among his separate creditors; and if, after paying all his separate creditors, there shall remain any balance, that balance will be added to the joint fund, for distribution among the joint creditors; or if the case be one where there is a balance of joint estate after paying all partnership creditors, such balance will be added to the separate fund, for distribution among the separate creditors And we are further of opinion that the demands of the peti-

tioners are to be considered as copartnership debts; and that the balance due from Horace Gray to the firm of Horace Gray & company, is not a proper debt to be filed and allowed against the separate estate of Horace Gray, for the purpose of sharing *pro rata* with the separate creditors of Horace Gray, in the distribution of his separate estate.

*Decree accordingly.*